```
___ FILED          ___ RECEIVED
___ ENTERED        ___ SERVED ON
             COUNSEL/PARTIES OF RECORD

         MAY 1 1 2012

       CLERK US DISTRICT COURT
         DISTRICT OF NEVADA
  BY:_____ DEPUTY
```

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| CHRIS TSCHIRHART, | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 3:11-cv-00281-RCJ-WGC |
| REGIONAL TRANSPORTATION COMMISSION OF WASHOE COUNTY et al., | ) ) ) ) | **ORDER** |
| Defendants. | ) | |

This case arises out of the termination of an employee. Defendants have moved for judgment on the pleadings. For the reasons given herein, the Court grants the motion.

## I.      FACTS AND PROCEDURAL HISTORY

Plaintiff Chris Tschirhart worked for Defendant Regional Transportation Commission of Washoe County ("RTC") for twelve years before RTC terminated him on February 7, 2011. (Compl. ¶ 1, Apr. 20, 2011, ECF No. 1-1). Although RTC ostensibly terminated Plaintiff for his violations of RTC policies and procedures in not obtaining approval for "change orders," Defendant Lee Gibson, an RTC manager, had in fact ordered Plaintiff to bypass the policies and procedures at issue, and RTC used the incident as a pretext for terminating Plaintiff due to his union-organizing activities and his other speech on matters of public concern that was unrelated to his employment duties. (See id. ¶¶ 5–12). Plaintiff sued RTC, Gibson, and Jeffrey Hale (another RTC manager) in state court on two causes of action: (1) First Amendment retaliation under 42 U.S.C. § 1983; and (2) wrongful termination under state law. Defendants removed and

1    have now moved for judgment on the pleadings.

2    **II.      LEGAL STANDARDS**

3            "After the pleadings are closed—but early enough not to delay trial—a party may move

4    for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The standards governing a Rule 12(c)

5    motion are the same as those governing a Rule 12(b)(6) motion. *See Dworkin v. Hustler*

6    *Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference . . . is the time of

7    filing.  [T]he motions are functionally identical . . . .").

8            A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star*

9    *Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to

10   dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the

11   complaint does not give the defendant fair notice of a legally cognizable claim and the grounds

12   on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering

13   whether the complaint is sufficient to state a claim, a court takes all material allegations as true

14   and construes them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792

15   F.2d 896, 898 (9th Cir. 1986).  A court, however, is not required to accept as true allegations that

16   are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell*

17   *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause

18   of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a

19   claim is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).

20           "Generally, a district court may not consider any material beyond the pleadings in ruling

21   on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the

22   complaint may be considered." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,

23   1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents whose contents are alleged

24   in a complaint and whose authenticity no party questions, but which are not physically attached

25   to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without

1  converting it into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.

2  1994). Also, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of

3  public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

4  Otherwise, if the district court considers materials outside of the pleadings, the motion is

5  converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp.*

6  *Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

7        The Court notes at the outset that Plaintiff's attorney badly misconstrues the

8  *Erie* doctrine in his opposition when he argues that the Court should apply state dismissal

9  standards because the present case is pending in this Court pursuant to its removal jurisdiction.

10  (*See* Pl.'s Opp'n 1:16–19, ECF No. 19 ("The Complaint was filed in State court before removal

11  to this Court. Nevada has declined to adopt the federal plausibility standard . . . . Instead, a

12  motion to dismiss will be granted only when it appears beyond a doubt that the plaintiff can

13  prove no set of facts entitling him to relief.")). The *Erie* line of cases stands for the proposition

14  that substantive rules of state law apply in federal diversity cases, *see Erie R.R. Co.*, 304 U.S. 64,

15  78 (1938), but that federal procedural rules govern where applicable, *see Hanna v. Plumer*, 380

16  U.S. 460, 473–74 (1978) ("To hold that a Federal Rule of Civil Procedure must cease to function

17  whenever it alters the mode of enforcing state-created rights would be to disembowel either the

18  Constitution's grant of power over federal procedure or Congress' attempt to exercise that power

19  in the Enabling Act.").

20  **III.    ANALYSIS**

21      **A.    First Amendment Retaliation**

22        To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured

23  by the Constitution or laws of the United States was violated; and (2) that the alleged violation

24  was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48

25  (1988). There is no respondeat superior liability under § 1983. *See Monell v. Dep't of Soc.*

1   *Servs.*, 436 U.S. 658, 691 (1978). In order to hold a municipality liable under *Monell* for

2   declaratory, injunctive, or monetary relief, the allegedly unconstitutional actions must have been

3   pursuant to an official municipal policy, ordinance, regulation, or officially adopted decision. *Id.*

4   at 690–91.

5         In a *Monell* claim, there are three ways to show a policy or custom of a municipality:
        (1) by showing a longstanding practice or custom which constitutes the standard

6         operating procedure of the local government entity; (2) by showing that the decision-
        making official was, as a matter of state law, a final policymaking authority whose

7         edicts or acts may fairly be said to represent official policy in the area of decision;
        or (3) by showing that an official with final policymaking authority either delegated

8         that authority to, or ratified the decision of, a subordinate.

9   *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (citations and internal

10   quotation marks omitted).

11         Finally, natural persons sued in their individual capacities, but not municipalities or

12   natural persons sued in their official capacities, may have qualified immunity against claims of

13   constitutional violations. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). An official is not

14   entitled to qualified immunity if: (1) there has been a constitutional violation; and (2) the state of

15   the law was clear enough at the time of the violation that a reasonable person in the defendant's

16   position would have known his actions violated the plaintiff's rights. *Saucier v. Katz*, 533 U.S.

17   194, 201 (2001). A court has discretion to analyze the second prong first in order to avoid

18   unnecessary constitutional rulings. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A "clearly

19   established" right for the purpose of qualified immunity is one that has been announced by the

20   Supreme Court or an applicable Court of Appeals, i.e., binding authority. *See Boyd v. Benton*

21   *Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004).

22         In order to find a state actor liable for a First Amendment retaliation claim, a plaintiff

23   must show that the actor "by his actions . . . deterred or chilled [the plaintiff's] political speech

24   and such deterrence was a substantial or motivating factor in [the officer's] conduct . . . ."

25   *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994) (citing *Mendocino Envtl. Ctr. v.*

1   *Mendocino Cnty.*, 14 F.3d 457, 464 (9th Cir. 1994)). "The defendant's intent *is* an element of

2   the claim." *Mendocino*, 14 F.3d at 464. If no chilling occurred, or if a person of "ordinary

3   firmness" would not have been silenced from future speech, there is no retaliation claim.

4   *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

5        The Supreme Court recently ruled that internal grievances by public employees generally

6   do not implicate the First Amendment. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). The

7   Ninth Circuit has decided a case similar to the present one. *See Desrochers v. City of San*

8   *Bernardino*, 572 F.3d 703 (9th Cir. 2009). In *Desrochers*, four sergeants of the San Bernardino

9   Police Department ("SBPD") filed an informal grievance about their supervisor, a Lieutenant.

10  *See id.* at 705. When the Lieutenant found out about the grievance, he requested a transfer,

11  which was granted, and the aggrieved sergeants had little to no contact with the Lieutenant

12  thereafter. *Id.* at 706. Two of the sergeants resolved their grievance, but Sergeants Desrochers

13  and Lowes went on to file a formal grievance against the Lieutenant, the Chief of Police, and the

14  Captain who had adjudicated the informal grievance. *Id.* The formal grievance, which was

15  supported by declarations describing several incidents, essentially alleged that the Lieutenant

16  was a bully who had created a "hostile work environment" and that neither the Captain nor the

17  Chief of Police had taken appropriate steps to remedy the situation. *See id.* at 706–07. The

18  Captain denied the formal grievance. *Id.* at 707. Desrochers and Lowes then filed a complaint

19  with the City's Human Resources Department ("HR") against the Lieutenant, his replacement,

20  the Captain, and the Chief of Police. *Id.* at 708. HR eventually denied the complaint. *Id.*

21  Desrochers was transferred from the Homicide Unit to the Robbery Unit, which he viewed as a

22  demotion, and Lowes had become the subject of an internal affairs investigation based on an

23  arrest he had made, resulting in a two-week suspension. *Id.* at 704.

24        Desrochers and Lowes filed suit for, *inter alia*, First Amendment retaliation under §

25  1983, but the district court granted summary judgment to the defendants because the speech at

1  issue did not address matters of public concern. *Id.* 708. The Ninth Circuit noted that analysis of

2  a First Amendment retaliation claim consists of:

3      a sequential five-step series of questions: (1) whether the plaintiff spoke on a matter
       of public concern; (2) whether the plaintiff spoke as a private citizen or public
4      employee; (3) whether the plaintiff's protected speech was a substantial or
       motivating factor in the adverse employment action; (4) whether the state had an
5      adequate justification for treating the employee differently from other members of
       the general public; and (5) whether the state would have taken the adverse
6      employment action even absent the protected speech.

7  *Id.* at 708–09 (quoting *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)). The district court

8  had ended its inquiry at the first step. *Id.* at 709. The court noted that "the essential question is

9  whether the speech addressed matters of 'public' as opposed to 'personal' interest," which is a

10  question of law upon which a plaintiff bears the burden. *Id.* (citations omitted). The line is

11  between "issues about which information is needed or appropriate to enable the members of

12  society to make informed decisions about the operation of their government" on the one hand,

13  *see id.* at 710 (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)), and

14  "speech that deals with 'individual personnel disputes and grievances' and that would be of 'no

15  relevance to the public's evaluation of the performance of governmental agencies'" on the other,

16  *see id.* (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (quoting *McKinley*,

17  705 F.2d at 1114)). The court specifically rejected the plaintiffs' attempt to characterize their

18  concerns about their supervisors' competence and the morale of the police force as issues of

19  public concern as opposed to internal power struggles. *See id.* 710–11. The court used the

20  following example:

21      [W]hat if we judges prohibited our law clerks from taking coffee breaks? Suppose
       they responded with a memorandum complaining about the action. While they might
22      assert—perhaps fairly—that caffeine deprivation would adversely affect their
       performance, morale, efficiency, and thus, their competency, no one would seriously
23      contend that such speech addressed a matter of public concern.

24  *Id.* at 711. The Court made several further points. First, it is the content of the speech that

25  matters, not a plaintiff's "post hoc characterizations" of the grievance. *Id.* Second, conclusory

1    allegations of the "negative" effects of a supervisor's behavior are insufficient; a plaintiff must

2    allege concrete negative results. *Id.* at 712–13. Third, the Court noted that Desrochers's claim

3    that his speech was an issue of public concern was seriously undermined by the fact his

4    grievance was purely internal. *Id.* at 714–15. The court concluded by stating that "while the

5    First Amendment invests public employees with certain rights, it does not empower them to

6    constitutionalize the employee grievance." *Id.* at 718 (quoting *Garcetti v. Ceballos*, 547 U.S.

7    410, 420 (2006)). In other words, griping about work to coworkers or supervisors, without more,

8    is not protected by the First Amendment such that retaliation therefore can support a § 1983

9    claim. *See id.* By contrast, where an employee's speech is in the form of trial testimony, for

10    example, the employee is protected from retaliation. *See Clairmont v. Sound Mental Health*, 632

11    F.3d 1091, 1104 (9th Cir. 2011) (distinguishing *Desrochers*).

12       Here, it is clear that Plaintiff's "speech on matters of public concern" was purely internal.

13    Plaintiff does not allege having engaged in this speech in any context plausibly placing it without

14    the internal-grievance rule of *Desrochers*, e.g., trial testimony or a letter to a newspaper or

15    legislator. The decrease of morale of RTC employees in Plaintiff's division is not information

16    "needed or appropriate to enable the members of society to make informed decisions about the

17    operation of their government." *See McKinley*, 705 F.2d at 1114. The Court will therefore grant

18    judgment on the pleadings as against the First Amendment claim.

19       **B.**     **Wrongful Termination**

20       "Under Nevada law, the absence of a written contract gives rise to the presumption that

21    employment is at will." *Brooks v. Hilton Casinos, Inc.*, 959 F.2d 757, 759 (9th Cir. 1992) (citing

22    *Vancheri v. GNLV Corp.*, 777 P.2d 366, 368 (Nev. 1989)). Plaintiff does not allege any

23    employment contract, so the presumption of at-will employment applies. At-will employment

24    can be terminated without liability by either the employer or the employee at any time and for

25    any reason or no reason, *Martin v. Sears-Roebuck & Co.*, 899 P.2d 551, 554 (Nev. 1995), with

1   limited exceptions based on "strong public policy," *see Hansen v. Harrah's*, 675 P.2d 394, 396

2   (Nev. 1984) (holding that an at-will employee can bring an action for retaliatory discharge when

3   fired in retaliation for filing a worker's compensation claim).

4          The Nevada Supreme Court is extremely protective of the at-will employment rule and

5   does not adopt exceptions lightly.  In fact, it does not automatically adopt exceptions even where

6   supported by explicit legislative statements of public policy. *See Sands Regent v. Valgardson*,

7   777 P.2d 898, 899 (Nev. 1989) ("Clearly, Nevada has a public policy against age discrimination.

8   Nevertheless, we do not perceive that our public policy against age discrimination is sufficiently

9   strong and compelling to warrant another exception to the 'at-will' employment doctrine.").  In

10  that case, the Court rejected an exception for age discrimination in the face of a statute explicitly

11  stating: "It is hereby declared to be the public policy of the State of Nevada to ... foster the right

12  of all persons reasonably to seek, obtain and hold employment . . . without discrimination,

13  distinction or restriction because of . . . age . . . ." *See id.* at 900 n.3 (quoting Nev. Rev. Stat.

14  § 233.010(1)).  The Nevada Supreme Court does not appear to have specifically adopted

15  retaliation for union organizing as an exception to the at-will employment rule, and in light of

16  that Court's approach to adopting exceptions to the rule, i.e., a case-by-case approach having no

17  fixed standards and which explicitly eschews any deference to legislative judgment, *see id.* at

18  899, it would be inappropriate for this Court to anticipate the creation of any new exception

19  where the Nevada Supreme Court has not spoken to the specific issue, at least in dicta.

20  Therefore no wrongful termination claim lies under state law in this case.

21         Moreover, there is a statutory remedy for this type of activity before the Local

22  Government Employee-Management Relations Board under Chapter 288 of the Nevada Revised

23  Statutes, and the Nevada Supreme Court has ruled there is no claim for wrongful discharge under

24  the common law where there is an adequate statutory remedy. *See Ozawa v. Vision Airlines. Inc.*,

25  216 P.3d 788, 791–92 (Nev. 2009).

**CONCLUSION**

1

2       IT IS HEREBY ORDERED that the Motion for Judgment on the Pleadings (ECF No. 15)

3 is GRANTED.

4       IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

5       IT IS SO ORDERED.

6 Dated: This 11th day of May, 2012.

7

8                           _____

9                           ROBERT C. JONES
                          United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25